**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ANGELA OLEKSA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   **Case No. 4:25-CV-1809 PLC** |
| | ) |
| KNOW INK, LLC, d/b/a KNOWINK, | ) |
| SCOTT LEIENDECKER and | ) |
| TRINET USA, INC., d/b/a TRINET, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant TriNet USA, Inc.'s ("TriNet USA") Motion to Dismiss Counts I and III of Plaintiff's Complaint, filed January 20, 2026.  (ECF No. 10). Plaintiff filed her Complaint in this Court on December 12, 2025.  (ECF No. 1).  With respect to TriNet USA, Plaintiff asserts one claim for violations of the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206(d) (Count I), and one claim for retaliation in violation of the Equal Pay Act (Count III).

In its motion to dismiss, TriNet USA asserts that Plaintiff fails to demonstrate a plausible right to relief against it.  (ECF No. 11).  Specifically, TriNet USA claims Plaintiff fails to posit factual allegations regarding TriNet USA's actions or inactions, and instead attempts to establish liability based on TriNet USA's alleged designation as a "co-employer", and its alleged issuance of Plaintiff's paychecks.  (*Id.*, PP. 2-3).

For the reasons set forth below, the motion is denied.

# BACKGROUND[1]

Defendant Know Ink, LLC, d/b/a KNOWINK ("Defendant Company") is a limited liability company, engaged in the business of election technology. (Compl., ¶¶ 2, 11).  In 2019, Defendant Company hired Plaintiff Angela Oleksa, a female, as the Director of Technical Service and Support. (*Id.*, ¶¶ 10, 23).  In that position, Plaintiff oversaw a technical service and support team that was responsible for ensuring successful elections for clients who were utilizing Defendant Company's products. (*Id.*, ¶ 24).

Defendant Scott Leiendecker ("Leiendecker"), a male, is the manager of Defendant Company. (Compl., ¶¶ 13-14).  According to Plaintiff, Leiendecker is the ultimate decision maker for Defendant Company. (*Id.*, ¶ 14).

Defendant TriNet USA is a professional employer organization engaged in the business of providing human resources support and services to businesses. (Compl., ¶ 15).  During the course of her employment, Plaintiff received a copy of the TriNet USA Worksite Employee Handbook ("Handbook"), in which TriNet USA designates itself as a co-employer of Defendant Company's employees. (*Id.*, ¶¶ 17-18, 27).  The Handbook contains a Policy Against Harassment and Discrimination and Retaliation. (*Id.*, ¶ 28).  During Plaintiff's employment, TriNet USA issued Plaintiff's paychecks. (*Id.*, ¶ 29).

Plaintiff alleges she sought out opportunities to prove her skills and dedication throughout her tenure as Director of Technical Service and Support, as she aspired to advance her career with Defendant Company. (Compl., ¶ 25).  Plaintiff claims she achieved many accomplishments during

---

[1] The background section is based on Plaintiff's Complaint, to which TriNet USA has not yet filed an answer.

her employment, including overseeing approximately two thousand jurisdictions during calendar years 2020-2024, and transitioning her local team to remote work during the COVID-19 pandemic. (*Id.*, ¶ 26).

Plaintiff alleges that on or about December 15, 2022, despite her outstanding job performance, she received a $10,000 bonus, which was $5,000 less than her previous year's bonus. (Compl., ¶ 30).  Plaintiff claims that several of her male subordinates and peers received $20,000 bonuses that year (for performing substantially equal work under similar working conditions), and that Defendants' other female employees received no bonuses.  (*Id.*, ¶¶ 31-32).  Plaintiff asked Leiendecker about her decreased bonus, and Leiendecker allegedly responded that "he had just looked at the bonus list and knew he had to make a cut from somewhere and selected [Plaintiff]." (*Id.*, ¶ 33).  When Plaintiff objected to the reduction based on her outstanding job performance, Leiendecker eventually increased Plaintiff's 2022 bonus to $15,000, which was still $5,000 lower than her male subordinates and peers.  (*Id.*, ¶¶ 35-36).  Plaintiff maintains she continued working on her department's growth, and continued to attempt new initiatives to capitalize on Defendants' success, despite a lack of support from her supervisors, including Leiendecker.  (*Id.*, ¶ 38).

In December 2023, Defendants failed to include Plaintiff in the process surrounding bonuses, even though in prior years it was Plaintiff who notified her team of their bonuses. (Compl., ¶ 39).  Plaintiff believes Defendants excluded her "in retaliation for her drawing attention to the discriminatory way bonuses were awarded in 2022 and to prevent her from knowing how her 2023 bonus compared to her male subordinates and peers."  (*Id.,* ¶ 40).  Plaintiff received a $5,000 bonus in December 2023, which she believes was lower than her male subordinates and peers performing substantially equal work under similar working conditions.  (*Id.*, ¶¶ 41-42).

3

In addition to the decreased bonuses, Plaintiff claims she was not paid a comparable salary to her male peers. (Compl., ¶ 44). In 2022, Plaintiff's salary was $92,700. (*Id.*, ¶ 45). According to Plaintiff, Keith Klein ("Klein"), a male who was then Defendant Company's Director of Software Development, received approximately $140,000 in salary during that time.[2] (*Id.*, ¶ 46). Plaintiff claims Klein received the higher salary even though (1) she and Klein had similar educational and technical backgrounds and work history; (2) Klein was hired as a director after Plaintiff; (3) Plaintiff and Klein worked in the same building under similar working conditions; and (4) Plaintiff performed certain functions of Klein's job when he was unable to do so. (*Id.*, ¶¶ 49-55).

During her October 2022 performance review with Brock Killen ("Killen"), Defendant Company's then Chief Operations Officer, Plaintiff requested a raise to $120,000. (Compl., ¶¶ 56-57). Plaintiff claims Killen agreed that Plaintiff deserved the requested raise, but stated he needed approval from Leiendecker, who was proving resistant. (*Id.*, ¶ 58). When Killen left his employment with Defendant Company, Plaintiff inquired as to the status of her requested raise with Jamie Schneider ("Schneider"), Defendant Company's then Chief of Human Resources. (*Id.*, ¶¶ 59-60). Schneider stated she would ask Leiendecker, and weeks later Leiendecker denied Plaintiff's request for a raise. (*Id.*, ¶¶ 61-62). Plaintiff alleges Schneider informed her that "the reason given by Defendant Leiendecker for denying [Plaintiff's] raise was that he, 'was not prepared to move forward at that time.'" (*Id.*, ¶ 63).

In approximately April of 2023, Plaintiff expressed concerns regarding her decreased bonuses and lower salary to her new supervisor, Patrick Werner ("Werner"). (Compl., 64).

---

[2] Plaintiff maintains her position and that of Klein were "substantially equivalent in terms of skills, effort, and responsibility, although [Plaintiff] outperformed Mr. Klein." (Compl., ¶ 48).

4

Werner conducted Plaintiff's performance review in July 2023, and cited no issues with her performance.  Plaintiff received a raise in salary to $115,000 effective August 1, 2023, nearly ten months after Plaintiff initially asked for a raise to $120,000.  (*Id.*, ¶ 66).

Plaintiff alleges she addressed Defendants' practice of compensating female employees less than male employees performing jobs requiring substantially equal skill, effort and responsibility under similar working conditions with both her immediate supervisors and Leiendecker.  (Compl., ¶ 69).  Plaintiff maintains Defendants retaliated against her for her demands of equal treatment in numerous ways, including:  removing her from the performance review process; decreasing her annual bonuses; altering her job duties and working conditions; affording male peers and subordinates educational and professional opportunities that were not afforded to Plaintiff; and reassigning leadership duties and other tasks that Plaintiff previously successfully performed to male colleagues.  (Compl., ¶¶ 71-82).  Plaintiff expressed her concerns to Werner in February 2024, including Plaintiff's belief that "she was being pushed out of her position with Defendant Company."  (*Id.*, ¶¶ 83-84).  Werner dismissed and refused to address Plaintiff's concerns, instead telling her to "'assume positive intent.'"  (*Id.*, ¶ 85).  Plaintiff then approached Derek Winter ("Winter"), Defendant Company's then Chief Operational Officer, whose "response was to tell [Plaintiff] that he heard her concerns, and while he hated to be the bearer of bad news, he didn't think the situation was going to change."  (*Id.*, ¶¶ 86-87).[3]

Plaintiff eventually resigned her position with Defendant Company, and claims she was "wrongfully/constructively discharged on or about May 29, 2024, in retaliation for her complaints

---

[3] Plaintiff claims "Mr. Winter then went on to tell [Plaintiff] that if she felt she was being pushed out of the Company, she shouldn't want to be there feeling that way."  (Compl., ¶ 88).  From this interaction, Plaintiff "got the clear impression [Winter] was telling her to quit, because it was not going to change."  (*Id.*, ¶ 89).

5

of Equal Pay Act violations by Defendants." (Compl., ¶¶ 94-95).  As noted above, Plaintiff filed the instant Complaint on December 12, 2025, asserting violations of the Equal Pay Act against Defendant Company and TriNet USA (Count I); violations of the Equal Pay Act against Defendant Leiendecker (Count II); and retaliation in violation of the Equal Pay Act against all Defendants (Count III).

In its motion to dismiss, TriNet USA asserts that Plaintiff fails to demonstrate a plausible right to relief against it as her alleged employer.  (ECF No. 11).  TriNet USA claims Plaintiff fails to posit factual allegations regarding TriNet USA's actions or inactions, and instead attempts to establish liability based solely on TriNet USA's alleged designation as a "co-employer", and its alleged issuance of Plaintiff's paychecks.  (*Id.*, PP. 2-3).

Plaintiff responds that "[a]t this early stage, these factual allegations are more than sufficient to state a plausible claim that Defendant TriNet was [Plaintiff's] employer during the relevant time periods in the Complaint."  (ECF No. 17, P. 2).  Plaintiff further asserts that whether TriNet USA "exercised sufficient control to qualify as an 'employer' as that term is defined under the EPA is a mixed question of law and fact that cannot be resolved on a Fed. R. Civ. P. 12(b)(6) motion."  (*Id.*).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). "However, the Court does not have to accept as true allegations that are contradicted by documents and exhibits referred to in the pleadings." *Campbell v. Vox Media, Inc.*, No. 4:23-CV-00577-BCW, 2024 WL 2503226, at *1 (W.D. Mo. Feb. 22, 2024) (citation omitted).

## **DISCUSSION**

In its motion to dismiss, TriNet USA argues that Plaintiff has not plausibly alleged that TriNet USA was Plaintiff's "employer" for purposes of the Equal Pay Act, thus warranting dismissal under Rule 12(b)(6). "The existence of an employer-employee relationship is a prerequisite to asserting a claim under the [Fair Labor Standards Act[4] ("FLSA")]." *Childress v. Ozark Delivery of Missouri, L.L.C.*, 95 F.Supp.3d 1130, 1138 (W.D. Mo. 2015) (citation omitted). "The plaintiff bears the burden of proving that an employer-employee relationship exists." *Id.* (citation omitted).

Section 206(d) of the FLSA requires employers to pay equal wages to employees of both sexes who perform equal work on jobs requiring "equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C. § 206(d)(1). "Employers" subject to the FLSA include "any *person* acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d) (emphasis added). The term is broad and

---

[4] The Equal Pay Act was enacted as an amendment to the FLSA, effectively expanding the FLSA's scope on pay equity, and applies the same standards as the FLSA.

comprehensive, "in order to accomplish the remedial purposes of the FLSA." *Thornton v. Mainline Communications, LLC*, 157 F.Supp.3d 844, 847 (E.D. Mo. 2016) (citing *United States v. Rosenwasser*, 323 U.S. 360, 362-63, 65 S.Ct. 295, 89 L.Ed. 301 (1945)). "Because the definition of 'employer' reaches so broadly, two entities may quality as 'employers' of the same employee with respect to the same working hours." *Padilla v. Caliper Building Sys., LLC*, No. 20-cv-00658 (SRN/KMM), 2020 WL 5629837, at *3 (D. Minn. Sept. 21, 2020). *See also Childress*, 95 F.Supp.3d at 1138 (citations omitted) ("An employee may have multiple employers that are simultaneously liable under the FLSA where the evidence shows that separate persons or entities exercise some level of control over the employee.").

To determine whether an employer-employee relationship exists, courts "typically consider the 'economic reality' of the relationship between plaintiff[] and defendant[], rather than other technical concepts." *Winesburg v. Stephanie Morris Nissan, LLC*, No. 2:22-cv-04157-MDH, 2023 WL 3901483, at *2 (W.D. Mo. Jun. 8, 2023) (citing *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)). *See also Thornton*, 157 F.Supp.3d at 848. In making the determination whether an entity qualifies as an employer (or joint employer), courts in this Circuit typically consider four factors: "'(1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled plaintiff's work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained plaintiff's employment records.'" *Winesburg*, 2023 WL 3901483, at *2 (quoting *Walsh v. Levering Reg'l Health Care Ctr., L.L.C.*, No. 4:21CV182 HEA, 2022 WL 670138, at *3 (E.D. Mo. Mar. 7, 2022) (citations omitted)). The Court examines the totality of the circumstances, and no one factor is dispositive. *Padilla*, 2020 WL 5629837, at *3. *See also Childress*, 95 F.Supp.3d at 1139 (internal quotation marks and

citations omitted) ("These factors are not exhaustive and no one factor is dispositive.  For example, the Supreme Court held that, in certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."); *Karnes v. Happy Trails RV Park, LLC*, No. 2:16-CV-04309-MDH, 2019 WL 11660936, at *1 (W.D. Mo. Jan. 8, 2019) (same).  "Although courts apply different and varying factors in applying the economic realities analysis, the overarching concern is whether the alleged employer possessed direct or indirect power to control significant aspects of the plaintiff's employment." *Childress*, 95 F.Supp.3d at 1139 (citations omitted).

"Because the economic realities test is a fact-intensive inquiry, challenges to a defendant's joint employer status are rarely appropriate on a motion to dismiss."  *Padilla*, 2020 WL 5629837, at *3 (citations omitted).  *See also Arnold v. DirecTV, Inc.*, No. 4:10CV00352 AGF, 2011 WL 839636, at *6 (E.D. Mo. Mar. 7, 2011) (citation omitted) (noting that an entity's status as an FLSA employer is a matter "that is appropriate for consideration on a motion for summary judgment, but not on a motion to dismiss.").

In her Complaint Plaintiff alleges, *inter alia*, that during her employment with Defendants Plaintiff received a copy of TriNet USA's Worksite Employee Handbook.  (Compl., ¶¶ 17, 27).  Plaintiff further alleges the Handbook contains a Policy Against Harassment and Discrimination and Retaliation, and that TriNet USA "designates itself as a co-employer of Defendant Company's employees in its Worksite Employee Handbook."  (*Id.*, ¶¶ 17, 28).  Finally, Plaintiff alleges that during her employment, TriNet USA issued her paychecks.  (*Id.*, ¶ 29).

Upon consideration of the parties' submissions, the Court finds the issues raised in TriNet USA's motion are more properly addressed on summary judgment, with a full record before the

Court.  As support for its ruling, the Court notes that key documents are missing from the record before it.  For example, in her Complaint Plaintiff alleges that page 13 of the Handbook states in relevant part as follows: "This policy prohibits any form of retaliation against a worksite employee or anyone else who makes a good faith complaint of discrimination or harassment or who participates in an investigation by your company or its agents, or an investigation, proceeding or hearing conducted by a state or federal agency or court." (Compl., ¶ 70).  Plaintiff further asserts in her response to TriNet USA's motion that TriNet USA created the Handbook, which allegedly includes the following language[5]:

> TriNet and your company are committed to equal-employment principals {sic} and comply with all applicable federal, state and local equal employment opportunity laws and regulations.  The terms and conditions of the employment relationships with all worksite employees are to be non-discriminatory—without regard to…sex…or any other protected category or class that may be applicable to you in the jurisdiction where you are employed.

(ECF No. 17, PP 2-3).  Despite these repeated references, Plaintiff did not attach a copy of the Handbook to her Complaint, and so the Court is unable to ascertain whether she has quoted the policies correctly, and/or taken them out of context.  Furthermore, while Plaintiff maintains TriNet USA performed certain services, such as creating policies and procedures that conditioned Plaintiff's employment and handling her benefits and payroll matters[6], *see* ECF No. 17, P. 5, said assertions are clearly based on matters extraneous to the Complaint and thus inappropriate for consideration on a motion to dismiss.  Finally, any agreement that may exist between TriNet USA and Defendant Company, outlining their specific duties and responsibilities with respect to

---

[5] Plaintiff does not include a citation to the Handbook page in her response.
[6] According to Plaintiff, TriNet USA issued her paychecks and administered her benefits. (ECF No. 17, P. 6).

employees, is not before the Court at this time. Without such key information, the Court cannot determine whether TriNet USA qualifies as Plaintiff's employer for purposes of her claims. TriNet USA's motion is therefore denied, without prejudice to its right to renew its arguments on summary judgment. *See Tahir v. Avis Budget Group, Inc.*, No. 09-3495 (SRC), 2009 WL 4911941, at *9 (D. N.J. Dec. 14, 2009) ("In light of the constraints of a Rule 12(b)(6) review and of the broad definition of 'employer' under FLSA, the Court will deny Defendants' motion to dismiss the claims against Avis Group. The denial, however, will be without prejudice, and Defendants may ask the Court to re-visit the issue of whether Avis Group is Plaintiff's employer within the meaning of FLSA on a motion for summary judgment.").[7]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant TriNet USA's Motion to Dismiss Counts I and III of Plaintiff's Complaint (ECF No. 10) is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2026.

---

[7] TriNet USA further argues Plaintiff's Complaint against it must be dismissed, because Plaintiff fails to differentiate any alleged misconduct between TriNet USA and Defendant Company. (ECF No. 11). "[I]t is not necessarily fatal to Plaintiffs' pleadings that they make allegations against certain Defendants as a group, to the extent that Plaintiffs allege that each Defendant is liable for committing essentially the same actions." *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2010 WL 5392767, at *39 (E.D. Mo. Dec. 21, 2010). The Court thus denies this portion of TriNet USA's motion as well.